### WILLIAM G. CANON *et al.*

*v.*

### SILAS GRIGSBY *et al.*

*Filed at Ottawa January 25, 1886.*

1. ALTERATION—*as to one of several makers of a promissory note, consenting to an alteration.* Notes for the price of certain property purchased by the makers, were filled up and' signed by the makers thereof, leaving a blank as to the place of payment, and providing for interest at the rate of six per cent, and given to one of the makers with which to complete the purchase. He took the same to the seller, who refused to receive them with the rate of interest provided, when the party having the notes consented to filling the blank and changing the rate of interest to seven per cent, and then delivered them and received the property: *Held,* that the maker who delivered the notes, knowing of the change, was bound by them, and could not take advantage of the alteration.

2. SAME—*by filling blank as to place of payment.* Where one of the makers of a note intrusted with it by the other for delivery, consents to the filling of a blank, thereby fixing the place of payment, and delivers the same so changed, the note will not be rendered void from such alteration.

3. SAME—*ratification by failing to repudiate on notice.* Two parties desirous of purchasing certain personal property, filled up two notes for the

price, bearing six per cent interest, and prepared a bill of sale of the property, with a warranty showing the giving of the notes at six per cent interest. One of the makers took these instruments to the seller, who refused to take notes bearing that rate of interest, and it was then agreed by such maker to change the rate of interest to seven per cent in both the notes and the bill of sale, which was done and the purchase concluded. The other maker of the notes afterward saw and read the the bill of sale, which showed the notes bore interest at seven per cent, and he failed to rescind the contract and return the property: *Held,* that if the maker last mentioned knew of the alteration of the notes, and did not in a reasonable time rescind the contract for that reason, by offering to return the property, he must be treated as having ratified the alteration, and was bound by it.

4. APPEAL—*reviewing the facts.* Where the Appellate Court affirms a judgment of the circuit court in a suit upon a note in which there is a conflict of evidence, it will be presumed that whatever the evidence tends to establish, was found in favor of the successful party by both the trial and Appellate courts, and the finding of the latter court upon the controverted questions of fact will be conclusive upon this court.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of Stephenson county; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. JAMES I. NEFF, and Mr. J. H. STEARNS, for the appellants:

It is only after a partnership is shown to exist that the admission or act of one of the parties is received in order to affect the others. 1 Greenleaf on Evidence, sec. 177; *Gordon v. Bankard,* 37 Ill. 147; *Degan v. Singer,* 41 id. 28; *Hahn v. Savings and Ins. Co.* 50 id. 456; *Gardner v. Manufacturing Co.* 52 id. 367; *Rogers v. Batchelder,* 12 Pet. 221.

An agent can not enlarge his authority by his acts and declarations, and his acts not within the scope of his authority do not bind the principal. *Mussey v. Beecher,* 3 Cush. 511.

A note materially altered is void, even in the hands of a *bona fide* holder for value; but if the alteration is made by mistake, and without fraudulent intent, the right of action

upon the original consideration remains. 2 Daniell on Neg. Inst. sec. 1413.

Joint ownership of a chattel, with an agreement to share the profits thereof, does not constitute a partnership. *Smith* v. *Vanderburg*, 46 Ill. 34; 1 Lindley on Partnership, *25; *Parker* v. *Fergus*, 43 Ill. 437.

Cases between alleged firms and third persons, grounded upon estoppel, have no application here. *Smith* v. *Knight*, 71 Ill. 148; *Hefner* v. *Palmer*, 67 id. 161.

The authority of a partner to bind his co-partners by note is confined to commercial partnerships. *Ulery* v. *Ginrich*, 57 Ill. 531; *Gray* v. *Ward*, 18 id. 32; *Morse* v. *Richmond*, 6 Bradw. 166.

A ratification, to be binding, must be made with a full knowledge of all the facts. *Reynolds* v. *Fence*, 86 Ill. 570; *Farwell* v. *Meyer*, 35 id. 40; *Railroad Co.* v. *Kelly*, 77 id. 426; *Kerr* v. *Sharp*, 83 id. 199.

Mr. E. P. BARTON, Mr. H. M. BARNUM, and Mr. H. C. HYDE, for the appellees:

The judgment of affirmance by the Appellate Court conclusively settles that the evidence justifies the verdict. *Sconce* v. *Henderson*, 102 Ill. 376; *Bennett* v. *Connelly*, 103 id. 50; *Railroad Co.* v. *Lewis*, 109 id. 120.

If one, with full knowledge of the facts, accepts the avails of an unauthorized treaty in his behalf, he thereby ratifies it. *Brown* v. *City of Aurora*, 109 Ill. 165; *Hall* v. *Harper*, 17 id. 82; *Strasser* v. *Conklin*, 54 Wis. 102; 1 Parsons on Contracts, 50.

Filling of blanks in a note, as to the place of payment, is no alteration. 2 Parsons on Notes and Bills, 566; *Kitchen* v. *Place*, 41 Barb. 465; *Angle* v. *Life Ins. Co.* 92 U. S. 330; *Redlich* v. *Doll*, 54 N. Y. 234; *McGrath* v. *Clark*, 56 id. 34; *Pohlman* v. *Taylor*, 75 Ill. 629.

The agreement to share profits in the use of the stallion made appellants partners. 1 Lindley on Partnership, 19, 22, 21; Collyer on Partnership, 68; *Robbins* v. *Laswell,* 27 Ill. 370; *Lockwood* v. *Doane,* 107 id. 335.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This suit was brought in the circuit court of Stevenson county, by the firm of Grigsby Bros. & Co., against William G. Canon and Uriah Woodring. The declaration counts on two promissory notes, each for the sum of $500, payable to the order of J. & C. Huston, one year after date, at Blandinsville, Illinois, with interest thereon at the rate of seven per cent per annum. At first defendants filed a plea of the general issue to the whole declaration, but afterwards, by leave of court given for that purpose, they filed a joint and several plea of *non est factum,* verified by their several affidavits. Plaintiffs are the assignees of J. & C. Huston, to whom the notes were delivered after they had been indorsed, and before maturity, by the payees. On the trial in the circuit court, the jury found the issues for plaintiffs, and assessed their damages at $1137.47. The court overruled the motion entered by defendants for a new trial, and rendered judgment on the verdict. That judgment was affirmed in the Appellate Court for the Second District, and defendants bring the case to this court on their further appeal.

Many of the important facts in this record are either admitted or are so fully proven, no controversy exists as to them. As to others, the evidence introduced in the trial court is sharply conflicting, and it will be presumed that whatever the evidence tends to establish was found in favor of plaintiffs by both the trial and Appellate courts. The finding of the latter court upon controverted questions of fact involved in the case will, of course, be taken as conclusive upon this court, and will be so treated in considering all questions of law discussed as arising upon the record.

There is no question made as to the fact defendants bought a stallion of the payees of the note sued on, for which they were to pay them $1000 within one year from the date of the sale, the purchase money to be secured by their promissory notes. But whether defendants bought the horse jointly, or as partners, or whether they were to pay interest at six per cent per annum or at the rate of seven per cent per annum, are matters of contention between the parties. The makers of the notes resided at or near Davis, and the payees at or in the vicinity of Blandinsville. It seems one of the defendants,—Woodring,—was at Blandinsville, and saw the horse, and on his return home reported his negotiations to his co-defendant, Canon. Thereupon defendants went to a justice of the peace and had two notes prepared, each for the sum of $500, payable one year after date, with interest at the rate of six per cent per annum. At the same time the justice prepared a warranty as to the horse, to be signed by the seller, in which it was stated, among other things, the price to be paid, and that the notes given in payment drew interest at six per cent per annum. Both defendants signed the notes so prepared for them, and then they were taken with the warranty, by Woodring, to Blandinsville, to complete the trade for the horse. Defendant Canon was not at Blandinsville when the trade was closed, nor, perhaps, at any other time. When Woodring arrived a second time at Blandinsville, there was no controversy as to the price to be paid for the horse or as to the credit to be given, but when the payees saw the notes had been prepared to bear only six per cent interest, they declined to receive them and deliver the horse. A controversy then arose. The payees required interest at the rate of eight per cent per annum, because they had to pay that rate at the bank where they expected to raise money upon the notes. The result of the controversy was the notes were so changed as to bear seven per cent interest instead of six per cent interest per annum, and the warranty that had

been prepared was so changed as to describe the notes as bearing seven per cent interest instead of six per cent, as originally written. The trade was then completed. The horse, sold with the warranty, as it was changed, was signed by J. & C. Huston, and was delivered to Woodring, to be taken to Davis, and the notes as altered were delivered to the payees by Woodring.

The defence insisted upon is, the notes, after they had been signed by the makers, were changed in two material respects, without their consent or subsequent ratification, in manner as follows: First, the notes were probably printed blanks, filled up by the justice. The blank left to be filled, with the name of the place where the notes were to be paid, was left blank. The notes read, "payable at . . . . . . ," and afterwards this blank was filled with the words; "Blandinsville, Illinois." And second, that the words six per cent interest were erased, and seven per cent inserted. Although plaintiffs were assignees of the notes before maturity, the alterations of the notes in the respect indicated were so manifest, it is insisted it was sufficient to charge them with notice. That fact may be conceded as to the rate of interest, but is hardly true as to the place of payment. As the case comes before this court, there can be no defence to the notes on the merits, so far as defendant Woodring is concerned. There is evidence tending to show the notes in suit were delivered by him to the payees after the blank had been filled with the words "Blandinsville, Illinois," and after the rate of interest had been changed from six to seven per cent, and that the alterations had been made, in both respects, in his presence and with his consent. Conceding these were controverted questions of fact at the trial, as seems to have been the case, the finding as to them by the Appellate Court was against defendants, and that finding is not open to review in this court, and is conclusive. So far, then, as defendant Woodring is concerned, he having delivered the notes after he knew

they had been changed, he is bound by them the same as he would have been had they been written that way in the first instance.

It remains to be considered whether the notes, since the alterations made in them after they had been signed by defendant Canon, although made without his consent at the time, are obligatory upon him. Where the notes may have been made payable is a matter of little consequence. Defendants' original obligation was to pay the money secured by the notes "at . . . . . . . ," but afterwards the blank was filled up with the words, "Blandinsville, Illinois," and that, too, without his knowledge or consent. There are cases that hold that the filling of a blank left in a note, with the place of payment, will not render the note invalid in the hands of an innocent holder. The leaving of the blank after "at," has been held, by some courts, as carrying on its face implied authority to fill the blank with the place of payment. In this case, one of the makers, to whom the note was intrusted by his co-maker for delivery, consented the blank might be filled as was done. That brings the case within the strictest rule held by any of the cases on this subject, and the notes are not rendered void by this alteration. Although not entirely analogous, the principles of the following cases, in a measure, at least, sustain this view of the law: *Elliott* v. *Levings*, 54 Ill. 213; *Kitchen* v. *Place*, 41 Barb. 465; *Redlich* v. *Doll*, 54 N. Y. 234; *McGrath* v. *Clark*, 56 id. 34; *Angle* v. *Northwestern Mutual Life Ins. Co.* 92 U. S. 330.

As respects the change of the rate of interest in the notes from what it was when defendant Canon signed them, whether he subsequently acquiesced and ratified the alteration in that regard, is a question of fact, and not of law. There was testimony to the effect defendant read the warranty after the horse was delivered to him, which plainly informed him, by the description given of the notes, that the rate of interest had been changed from six to seven per cent. After notice

of that fact, he still retained the horse, and never offered to rescind the contract because of such alterations in the notes, or for any other reason. That was evidence tending to prove defendant ratified the change made in the notes, and as the Appellate Court has so found, its findings in that respect must be regarded as conclusive as to this controverted fact in the case. Assuming, then, that defendant Canon knew of the alteration in the notes as to the rates of interest, and that he did not, within any reasonable time, rescind the contract for that reason, and return the property bought, he must be held to have ratified the alterations made in the notes, and will be bound by the notes in like manner as if no change had been made in them.

This court fully concurs in the view taken by the Appellate Court, it is unnecessary to discuss the question whether defendants were or were not partners in the transaction out of which this litigation arose. Conceding, if need be, they were not partners, the evidence establishes a joint liability, and that is sufficient to sustain the present judgment. Nor is it deemed important to enter upon any critical analysis of the instructions. To do so would extend this opinion to a most unusual length, and would answer no good purpose. This much may be said : the instructions given at the instance of both parties are far more numerous than the nature of the case required. It may be, that on a close analysis this court would not approve of all of the instructions given on behalf of plaintiffs, and does not wish to be understood as approving of them. But they have been examined, and it is not perceived they contain anything that was especially injurious to defendants, under the evidence contained in this record. It is apparent the jury were not misled by anything contained in them. As respects the instructions given for defendants, it may be safely stated more were given than ought to have been. Every principle of law strictly applicable to the defence sought to be made, was contained in the

instructions that were given, and there was no error in refusing the unreasonable number of others asked by defendants.

On the whole record considered, the judgment of the Appellate Court should be affirmed.                    *Judgment affirmed.*